IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JONATHAN J. EDMISTEN,

                    Plaintiff,

          v.                          CASE NO.  08-3091-SAC

STATE OF KANSAS,
et al.,

                    Defendants.

O R D E R

This civil rights complaint was filed pursuant to 42 U.S.C. §
1983 by an inmate of the Lansing Correctional Facility, Lansing,
Kansas (LCF).  Plaintiff also cites 42 U.S.C. § 12131, et seq.,
Title II[1] of the Americans with Disabilities Act (ADA).  Plaintiff
names as defendants the State of Kansas, the Kansas Department of
Corrections (KDOC), and Correct Care Solutions (CCS), as well as
Kansas officials: Governor Kathleen Sebelius[2]; Secretary of
Corrections Roger Werholtz; David McKune, Warden LCF; and Dale
Davis, Director Dental Services for KDOC[3].

───────────────

[1]      The ADA contains three titles which address discrimination against
persons with disabilities in three contexts.  "The ADA's Title II, prohibiting
discrimination in the distribution of public services, is the only title of three
that plaintiff's allegations arguably implicate."  See White v. State of Colo.,
82 F.3d 364, 367 FN5 (10th Cir. 1996).

[2]      Defendant Sebelius shall be dismissed from this action.  She is
clearly named only by virtue of her position as Governor.  She is immune to suit
for damages in her official capacity.  With regard to her personal capacity,
plaintiff alleges no facts whatsoever regarding acts by the Governor.  Under §
1983, a Kansas supervisory official cannot be liable for the acts of employees and
agents on a theory of vicarious liability or respondeat superior.  See Monell v.
Dep't of Social Servs., 436 U.S. 658, 692 (1978).  Personal participation is an
essential allegation in a § 1983 civil rights action.  Bennett v. Passic, 545 F.2d
1260, 1262-63 (10th Cir. 1976).

[3]      Plaintiff includes in the caption "Jon and Jane Does as found in
Discovery," but provides no descriptive information whatsoever regarding these
possible additional defendants.  They are not mentioned in the complaint, and
shall not be considered further herein.

**FACTUAL BACKGROUND**

The following facts are alleged by plaintiff in his complaint. Plaintiff has "Temporomandibular Joint Dysfunction" (TMJ), and in 1999, before he was incarcerated, underwent "extensive surgery" including implantation of a Total Bi-lateral TMJ Joint Prosthesis, which allowed his jaw to function. Daily antibiotics were prescribed for the implants. Approximately five years later the right prosthetic device was damaged, when plaintiff was hit, and was removed. The left device was not damaged and his jaw still functioned properly.

In May 2006, plaintiff was committed to the custody of the Kansas Department of Corrections (KDOC) for service of a 39-month sentence, and confined at the El Dorado Correctional Facility in El Dorado, Kansas (EDCF). Upon his arrival he informed "the medical staff" of his medical history and need for a daily regimen of antibiotics due to the prosthetic device. He was not provided necessary medication. Around May 25, 2006, plaintiff's right prosthesis failed while he was eating. He was seen by the prison dentist, Dr. Cannon, who referred him to an oral surgeon in Wichita, Dr. Cole. Dr. Cole advised that immediate surgery appeared to be necessary preceded by an MRI. He prescribed pain medications, antibiotics, and a special soft diet. Plaintiff was not provided the prescribed medications or diet. In July, 2006, plaintiff was given an MRI and re-examined by Dr. Cole, who advised that surgery was necessary to remove and replace the device. However, Dr. Cole "did not wish to become involved" and told prison officials he did not have the expertise to perform the surgery. He recommended that

plaintiff's surgery be performed by Dr. Kent in New Orleans, who had done his surgery in 1999. In September, 2006, plaintiff was transferred to Lansing Correctional Facility (LCF). He was seen by an ENT physician at St. Johns Hospital in Leavenworth, Kansas, and by an oral surgeon at Truman Medical Center in Missouri, both of whom "tried to reduce the prosthetic device without success." The oral surgeon determined plaintiff needed surgery that he was not qualified to perform and recommended Dr. Kent. On October 27, 2006, plaintiff was taken to New Orleans where Dr. Kent removed the total prothesis and informed plaintiff and "the escort officials" that plaintiff would need time to heal from the surgery. He prescribed pain medications and a special soft diet, and advised that the future treatment plan would be discussed in a follow-up appointment a week later. Plaintiff was returned to LCF on October 29, 2006, and has never been taken for the follow-up appointment. Nor has he been seen another physician qualified to prescribe a plan of treatment to restore the function of his jaw. In addition, he has not been provided the prescribed diet or any medical care for his condition. The "dentist and officials" acknowledge that the surgery to replace the jaw prosthesis would remedy his medical needs, but state that plaintiff can wait until he is released because the procedure would cost $100,000.00. The lack of the TMJ prosthesis is having a "significant adverse effect" on Mr. Edmisten's eating and talking, and he has suffered "substantial and recurring pain" since the removal of the device.

In his complaint, plaintiff affirmatively answers the question as to whether he has begun other lawsuits dealing with the same facts or otherwise relating to conditions of his imprisonment. He

cites <u>Edmisten v. Werholtz, et al.</u>, Case No. 07-3116-JWL (hereinafter 07-3116), and notes it is still pending.  Court records indicate a Telephone Scheduling Conference (Doc. 161) is set in this previously filed case for October 22, 2008, before Magistrate Judge K. Gary Sebelius.  Plaintiff is represented by appointed counsel in 07-3116 (Docs. 132, 136, 139).

**CLAIMS**

Plaintiff asserts that defendants acted with deliberate indifference to his serious medical needs, and that he has been subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  He seeks compensatory, actual, and punitive damages for pain and suffering, mental anguish, personal humiliation, violation of his constitutional rights, and injury to his quality of life.  In addition, he seeks injunctive relief in the form of an order by the court to all defendants to stop retaliatory measures[4] and to provide plaintiff with medical care and treatment to restore the function of his jaw including replacement of the prosthesis.

Plaintiff also claims "discrimination by all defendants for their failure to provide" him with a medically necessary prosthesis in violation of Title II of the ADA.  He seeks "punitive damages" for "discrimination of the Title II of the ADA."  In addition, he seeks costs of this action and attorney fees "pursuant to" § 1983 and the ADA.

---

[4]     Plaintiff alleges no facts suggesting any defendant has taken retaliatory action against him.  He shall not be granted injunctive relief based upon this conclusory request for relief.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Plaintiff has filed a Motion for Leave to Proceed in forma pauperis. He was previously granted leave to proceed without prepayment of fees in 07-3116, and was assessed the full district court filing fee in that case of $350.00. He has also been assessed appellate court costs of $455.00 resulting from an interlocutory appeal taken in 07-3116. He is currently making partial payments to satisfy these prior fee obligations. The court shall forego ruling on this motion until plaintiff responds to the order entered herein. If this action survives screening, plaintiff will be assessed another fee of $350.00 for this case[5]. However, if this action is dismissed as a result of this screening, the court may deny plaintiff's motion for leave to proceed without prepayment of fees as moot.

**SCREENING**

Because Mr. Edmisten is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint should be dismissed for reasons that follow.

**EIGHTH AMENDMENT CLAIMS ARE DUPLICATIVE**

---

[5]    Plaintiff would be obligated to pay this assessed fee in full through payments from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2) beginning after he has fully satisfied his prior fee obligations.

The court finds plaintiff's Eighth Amendment claims in this case are duplicative of the Eighth Amendment claims upon which his complaint is based in 07-3116.  In 07-3116, plaintiff filed an Amended Complaint (Doc. 138) on August 11, 2008.  Three individual defendants named therein are also named in the instant complaint: Roger Werholtz, Secretary of Corrections; David McKune, Warden LCF; and Dale Davis, Director Dental Services (for CCS or KDOC).  In his Amended Complaint, Mr. Edmisten seeks compensatory, actual, and punitive damages plus attorneys' fees and litigation costs.[6]

In the original complaint filed in 07-3116, the defendants named in the caption also included State of Kansas, KDOC, and Correct Care Solutions.  On May 30, 2008, a Memorandum and Order was entered in 07-3116 determining dispositive motions filed by defendants (Doc. 118).  Therein, defendant CCS was dismissed because the original complaint failed to allege a conspiracy, policy, or custom establishing CCS liability[7].  The complaint was dismissed as against defendants Roger Werholtz and David McKune because plaintiff had pled insufficient facts to establish their supervisory liability[8].  All damages claims were dismissed against the KDOC and other defendant state officials to the extent they were sued in

---

[6]      In his request for relief on the last page of his original pro se complaint (Doc. 1) in 07-3116, Mr. Edmisten asked for injunctive relief including to stop any retaliatory measures, to provide him with the needed medical treatment, and to restore the use of his jaw.  However, in his Amended Complaint his attorney did not include a request for injunctive relief.  Plaintiff has been advised by the judge in 07-3116 that he must raise all his claims for relief therein.

[7]      Plaintiff alleges no additional facts establishing CCS liability in this case.

[8]      Plaintiff was given leave to file an Amended Complaint alleging additional facts.  His Amended Complaint again names defendants Roger Werholtz and David McKune.

their official capacities, based upon Eleventh Amendment immunity[9].

Likewise in this case, defendants State of Kansas, KDOC, and CCS are not "persons" and therefore are not proper defendants for plaintiff's claims under § 1983.   Moreover, while one of these public entities may be the appropriate defendant for an ADA claim, none is a proper defendant in a civil rights action seeking money damages based upon a claim of cruel and unusual punishment.

Having compared the complaints filed in the two actions, this court finds that the parties in plaintiff's two cases are either the same or in privity[10].   The court further concludes that the Eighth Amendment claims in both are identical in that they are based upon the exact same events, transactions or occurrences; and the same relief is, has been, or could have been, sought.   See Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997)("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."); cf. Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982, 987 FN1 (10th Cir. 2002)(In the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion.); Yapp v. Excel

_____

[9]     The Eleventh Amendment generally bars suits in federal court against states and entities considered arms of the state.  See Edelman v. Jordan, 415 U.S. 651, 663-64 1974); Unified Sch. Dist. No. 480 v. Epperson, 583 F.2d 1118, 1121 (10th Cir. 1978).  It also generally bars federal suits against state officers in their official capacities for money damages.  Edelman, 415 U.S. at 663.  Moreover, the Supreme Court has held that neither states nor state officers sued in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  It does not bar 1983 claims for prospective injunctive relief.  White, 82 F.3d at 366.

[10]    All parties in this suit are or were also parties in 07-3116, with the exception of Governor Sebelius.  The improper naming of the Governor in this action does not prevent this court from finding identity of parties.

<u>Corp.</u>, 186 F.3d 1222, 1227 (10th Cir. 1999).  The court concludes that plaintiff's claims herein of unconstitutional denial of medical treatment are duplicative of his previously filed, pending civil rights action and should be dismissed, without prejudice, as a result.

A district court has managerial responsibility over its own docket.  Duplicative lawsuits do not serve the interests of justice and are likely to lead to a waste of judicial resources.  <u>See Hoffmann-LaRoche Inc. v. Sperling</u>, 493 U.S. 165, 171-73 (1989); <u>Curtis v. Citibank</u>, 226 F.3d 133, 138 (2nd Cir. 2000)(Describing claim-splitting dismissal as part of district court's "general power to administer its docket."); <u>Serlin v. Arthur Andersen & Co.</u>, 3 F.3d 221, 223 (7th Cir. 1993)(District court may dismiss suit "for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court."); <u>Doe v. Douglas County Sch. Dist.</u>, 775 F.Supp. 1414, 1416 (D.Colo. 1991)("Although there is no Tenth Circuit decision on point, dismissal of plaintiff's redundant [§ 1983] claim is warranted as a matter of judicial economy and efficiency."). Preventing repetitious litigation "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." <u>See Allen v. McCurry</u>, 449 U.S. 90, 94 (1980); <u>May v. Parker-Abbott Transfer & Storage, Inc.</u>, 899 F.2d 1007, 1009 (10th Cir. 1990); <u>Augustine v. Adams</u>, 88 F.Supp.2d 1166, 1170 (D.Kan. 2000).

**FAILURE TO STATE FACTS IN SUPPORT OF ADA CLAIM**

The only difference, claim-wise, in this case from plaintiff's previously-filed case is that he has added an ADA claim.  For reasons that follow, this court finds that plaintiff does not allege sufficient facts in support of his ADA claim.  The court also finds that plaintiff's asserted ADA claim is based upon the exact same events as his already-pending civil rights action and should not go forward as this separate action.

Title II of the ADA applies to state prisons and prison services.  Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206 (1998).  Title II provides in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  A "'qualified individual with a disability'" is defined as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  "Public entity" is defined as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C. § 12131(1).  To state a claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or

discrimination was by reason of a disability.  See Robertson v. Las Animas County Sheriff's Dept., 500 F.3d 1185, 1193 (10th Cir. 2007).

Plaintiff does satisfy the first factor because he fails to allege facts in the complaint indicating he is a qualified individual under Title II.   There is only one sentence in the complaint in which plaintiff suggests that he has a disability[11]. In that sentence he refers to "his inability" to perform the "basic major daily life" activities "of eating foods and speaking clearly." While being unable to speak clearly surely can amount to a disability, plaintiff fails to describe the degree of his speaking difficulty or allege any facts showing he has a speech impairment actually recognized as a disability.   The same is true of his alleged eating disability.

With respect to the second factor, plaintiff's bare statement may be construed as sufficiently alleging he was denied the benefits of KDOC's program for inmate medical care.[12]  On the other hand, the third factor is not satisfied, as no allegations in the complaint suggest that the denial of such benefits was by reason of his alleged disabilities.   In the one sentence referred to above,

---

[11]    Disability is defined by the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A-C).  Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working. See Poindexter v. Atchison, Topeka & Santa Fe Ry. Co., 168 F.3d 1228, 1231-32 (10th Cir. 1999).

[12]    The alleged deliberate refusal of prison officials to accommodate plaintiff's disability-related medical care needs may constitute exclusion from participation in or denial of the benefits of the prison's "services, programs, or activities." U.S. v. Georgia, 546 U.S. 151, 157 (2006), citing 42 U.S.C. § 12132; see also Yeskey, 524 U.S. at 210 (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

plaintiff stated he had been "denied all medical care" because of his inability to eat and speak clearly.  However, plaintiff provides no facts in support of this conclusory statement[13].  He does not describe even one incident in which his alleged disabilities - his inability to speak clearly, or eat - actually resulted in the denial of necessary medical treatment.  Instead, the allegations in the complaint suggest that the decisions, actions, or inactions of which plaintiff complains with regard to his medical needs and denial of adequate treatment could have resulted from deliberate indifference, budget considerations, retaliation, incompetence, or inadvertence. None of his factual allegations suggest that they resulted from discrimination due to a disability.

Moreover, plaintiff's only specific prayer for relief on his ADA claim is for punitive damages for discrimination under Title II. Title II creates a private cause of action for compensatory damages against the States for conduct that actually violates the Fourteenth Amendment.  <u>United States v. Georgia</u>, 546 U.S. at 159; <u>see</u> 42 U.S.C. § 12133.  However, the United States Supreme Court has held that punitive damages may not be awarded in a private cause of action brought under Title II of the ADA.  <u>Barnes v. Gorman</u>, 536 U.S. 181, 189 (2002).

In addition, it is evident from both cases that plaintiff's claim at its core is for denial of necessary medical treatment, not disability discrimination[14].  Plaintiff's ADA claim is for damages

---

[13]    Plaintiff's bald conclusion that he has demonstrated "discrimination by all defendants for their failure to provide the . . . prosthesis under Title II" is not a factual allegation.

[14]    Plaintiff's claim is similar to that considered by the United States Court of Appeals for the Seventh Circuit in <u>Bryant v. Madigan</u>, 84 F.3d 246 (7th Cir. 1996).  Bryant, an Illinois state inmate and a paraplegic, sued prison

and is based only upon the same allegations of denial of medical treatment as his Eighth Amendment claims here and in his prior lawsuit.  The ADA does not provide an additional federal cause of action to challenge medical treatment provided to a prisoner.  <u>See</u> <u>Fitzgerald v. Corrections Corp. of America</u>, 403 F.3d 1134, 1144 (10th Cir. 2005); <u>Rashad v. Doughty</u>, 4 Fed.Appx. 558, \*\* 1 (10th Cir. Jan 29, 2001)[15]; <u>Moore v. Prison Health Services, Inc.</u>, 24 F.Supp.2d 1164 (D.Kan. 1998), <u>aff'd</u>, 201 F.3d 448 (10th Cir. 1999); <u>see also</u> <u>Johnson by Johnson v. Thompson</u>, 971 F.2d 1487, 1493-94 (10th Cir. 1992), <u>cert</u>. <u>denied</u>, 507 U.S. 910 (1993)(The term "otherwise qualified" cannot ordinarily be applied "in the comparatively fluid context of medical treatment decisions without distorting its plain meaning."); <u>Fitzgerald</u>, 403 F.3d at 1144, *quoting* <u>United States v. University Hospital</u>, 729 F.2d 144, 157 (2nd Cir. 1984)("Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory'.").  Like in <u>Bryant</u>, Mr. Edmisten's claim under the ADA is nothing more than a challenge to his medical care and therefore fails to state a claim for relief under the ADA.  <u>See</u> <u>Moore</u>, 201 F.3d 448, 1999 WL 1079848 at \*l (10th Cir., Dec. 1, 1999)(unpublished opinion)[16](finding that

---

employees under the ADA and the Eighth Amendment, alleging he was injured because he was denied guardrails for his bed and was denied pain medication after an operation to repair his leg.  The Circuit Court determined plaintiff failed to state a claim under the ADA, finding his core complaint was incompetent treatment for his underlying medical condition, and that such a complaint does not state a claim for relief under the ADA because "[t]he ADA does not create a remedy for medical malpractice."  <u>Id</u>. at 249.

[15]    A copy of this unpublished opinion is attached as required by rules of the Tenth Circuit Court of Appeals.

[16]    A copy of this unpublished opinion is attached.

the ADA affords disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general cause of action for challenging the medical treatment of their underlying disabilities); Fitzgerald, 403 F.3d at 1143-44 (Objections by inmates to a denial of medical treatment or alleged substandard care for a condition they are suffering, do not amount to discrimination claims under the ADA.).

In making the foregoing findings that this action should be dismissed as duplicative and for failure to allege sufficient facts in this complaint in support of an ADA claim this court expresses no opinion whatsoever on the merits of any of plaintiff's claims or his other pending lawsuit.

**MOTION TO AMEND IN 07-3116 IS PROPER PROCEDURE FOR ADA CLAIM**

Plaintiff could, and should, have raised his ADA claim along with any and all claims based upon the same set of facts in his previously filed action.  See e.g., U.S. v. Georgia, 546 U.S. at 154-55 (2006)(Court considered claims against the State of Georgia, the Georgia Department of Corrections, and several individual prison officials under 42 U.S.C. § 1983 and Title II of the ADA seeking both injunctive relief and money damages.)  He does not allege, and the record does not show, that he has attempted to file a timely motion to amend in 07-3116 to add an ADA claim.  It clearly would have been more efficient for him to have moved to amend or for joinder in that case, rather than filing this separate pro se lawsuit, which is bound to be consolidated if not dismissed.  The fact that plaintiff, who is represented by counsel in his previously pending case only, either inadvertently or intentionally failed to

13

raise an ADA claim in 07-3116, does not entitle him to proceed on such a claim in this duplicative action.  Nor may plaintiff avoid or overcome the strictures of the federal rules governing amendments and joinder by filing a separate, duplicative action.

If plaintiff can marshal and present additional facts or exhibits indicating he is a "qualified individual" with a known disability under the ADA, and has been discriminated against due to that disability, he may still attempt to proceed on a claim under that federal law.  Ordinarily, this court would give plaintiff the opportunity to amend his complaint to state any additional facts.  However, given that this action is duplicative of an already-pending action, plaintiff's opportunity to amend is only that remaining, if any, in 07-3116.  To take advantage of his opportunity, plaintiff must file a timely motion to include an ADA claim, additional supporting facts, and the appropriate defendant public entity in 07-3116.  This court expresses no opinion on the likelihood of success of such a motion.

**SHOW CAUSE ORDER TO PLAINTIFF**

Plaintiff shall be given time to supplement the record to show cause why this complaint should not be dismissed as duplicative of 07-3116.  The dismissal of this action as duplicative and for failure to state facts in support of plaintiff's ADA claim will be without prejudice to plaintiff filing a timely[17] motion to amend in 07-3116.

---

[17]    Plaintiff obviously did not file a motion to amend to add an ADA claim in 07-3116 in time for it to be granted without leave of court.  He is directed to immediately notify the judges and his counsel in 07-3116 of this lawsuit and this Memorandum and Order.

**IT IS THEREFORE ORDERED** that this action is dismissed as against defendant Governor Sebelius.

**IT IS FURTHER ORDERED** that plaintiff is given twenty (20) days to supplement the record to show cause why this action should not be dismissed, without prejudice, as duplicative of 07-3116.

**IT IS SO ORDERED**.

Dated this 9th day of October, 2008, at Topeka, Kansas.


<u>s/Sam A. Crow</u>
U. S. Senior District Judge